**SYNTAX, INC., Petitioner,**

**v.**

**John L. HALL, Sr., Steve Ray Kasprzak, Klein Independent School District and Harris County, Texas, Respondents.**

No. 94–0922.

Supreme Court of Texas.

Argued Feb. 8, 1995.

Decided May 11, 1995.

Rehearing Overruled June 8, 1995.

Stephen N. Riner, Houston, for petitioner.

Joseph D. Harwood, Barbara Toby Baruch, F. James Wunderlich, Houston, for respondents.

HIGHTOWER, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and CORNYN, GAMMAGE, SPECTOR, and OWEN, Justices, join.

 In this case we must decide whether the Tax Code gives taxing units the au-

thority to profit from excess funds derived from the sale of property taken in satisfaction of a judgment for delinquent taxes. The trial court answered this question affirmatively, and the court of appeals agreed. We reverse the judgment of the court of appeals, and remand this case to that court for further proceedings consistent with our opinion.

On February 8, 1988, the Klein Independent School District (KISD) and Harris County secured a judgment against Verna Neal for delinquent real property taxes and for foreclosure of their tax lien. The amount of the delinquent taxes, including penalties and interest, was $38,542.79. On May 3, 1988, a tax sale was held by public auction, but no bids were received. As a consequence, the property was "struck off" to KISD for the minimum bid amount, the amount of the delinquent taxes. After two years had passed, KISD again arranged to sell the property. On April 20, 1991 John L. Hall, Sr. and Steve Ray Kasprzak successfully bid $85,000 for the property. The property was deeded to Hall and Kasprzak on May 13, 1991. That deed was then recorded. KISD paid Harris County for the taxes due to the county, but did not tender the excess of the funds received over the total taxes, interest, costs and penalties due into the registry of the court for distribution to Neal. On May 18, 1991, Neal executed an assignment to Syntax. Syntax recorded this assignment after the deed to Hall and Kasprzak was recorded. Hall and Kasprzak then filed the present suit to quiet title to the property.

Syntax filed counterclaims against Hall and Kasprzak, as well as KISD and Harris County, seeking the distribution of the excess funds. The trial court granted summary judgment for Hall and Kasprzak on

their suit to quiet title and against Syntax on its counterclaim and the court of appeals affirmed. 881 S.W.2d 719. The sole issue in this appeal is whether the taxing authorities are required to deposit with the court any excess proceeds from a resale of foreclosed property when the resale occurs after the period of redemption has expired. We hold that Sections 34.02 and 34.06 of the Tax Code require such a deposit.

■ The taxing authorities argue that Section 34.01 of the Tax Code extinguishes any right which a taxpayer may have had to excess proceeds arising from the sale of the property. We disagree. Section 34.01 of the Tax Code provides that when the taxing unit takes title to property in the absence of a sufficient bid at the initial foreclosure sale, the taxing unit's *title* includes "all the interest owned by the defendant ... subject only to the defendant's right of redemption." Tex. Tax Code Ann. § 34.01 (Vernon 1992). This provision describes the state of the taxing unit's *title*, however we do not perceive that this section would extinguish any rights held by the former landowner which are not *interests in the title to the property*. Thus, this section does not extinguish the rights of the landowner to excess proceeds, if any, upon the sale of the property. Such an interest is not a burden upon the title to the land, but rather is a chose in action which exists if and when an excess fund is created. *See Walsh v. Spencer,* 275 S.W.2d 220 (Tex. Civ.App.—San Antonio 1954, no writ).[1]

The Texas Tax Code contains a specific provision, section 34.06, for resales following foreclosure that is separate from section 34.02, the provision that addresses the distribution of proceeds following a foreclosure sale at which a third party purchases the property and it is not struck off to the taxing

---

1. We are further persuaded by the manner in which the legislature has purposefully distinguished between the right of redemption and the right to excess proceeds in other portions of the code. The right of redemption provides the taxpayer a right to compel the reconveyance of the property upon payment of taxes and other expenses. Because the mere existence of this right can retard any future productive use of the property until the right has expired, the legislature has limited redemption periods to a maximum of two years. *See* Tex.Tax Code Ann. § 34.21 (Vernon 1992). The claim for excess proceeds concedes the loss of ownership and simply seeks a return of the excess value that was received at the sale. Because this right is less disruptive to potential productive uses of the property, the legislature extended the period for making these claims to seven years. *See Id.* at § 34.04(a). Given the distinctions between these two taxpayer protections, opting to forego the right of redemption need not foreclose one's right to receive the excess value of a foreclosed property.

authority. However, section 34.06 refers to section 34.02 for instructions as to how excess proceeds will be distributed following a resale. Section 34.06 provides:

## § 34.06. Distribution of Proceeds of Resale

(a) The proceeds of a resale of property purchased by a taxing unit at a tax foreclosure sale shall be paid to the purchasing taxing unit.

(b) The purchasing taxing unit shall pay all costs and expenses of court and sale and *shall distribute the remainder of the proceeds as provided by Section 34.02* of this code for distribution of proceeds after payment of costs.

Tex. Tax Code Ann. § 34.06 (Vernon 1992) (emphasis added).

Under this section, once there has been a resale to a third party, the procedure for distribution of any excess proceeds is the same as the distribution of proceeds where there has been an *initial sale* to a third party under section 34.02. Section 34.02 provides:

## § 34.02. Distribution of Proceeds.

(a) The proceeds of a tax sale shall be applied first to the payment of cost. The remainder shall be distributed to all taxing units participating in the sale in satisfaction of the taxes, penalties, and interest due each.

(b) If the proceeds are not sufficient to pay the costs and taxes, penalties, and interest due all participants in the sale, each participant is entitled to a share of the proceeds after payment of costs in an amount equal to the proportion its taxes, penalties, and interest bear to the total amount of taxes, penalties, and interest due all participants in the sale.

(c) If the sale is pursuant to foreclosure of a tax lien, the officer conducting the sale shall pay any excess proceeds after payment of all costs and of all taxes, penalties, and interest due all participants in the sale to the clerk of the court issuing the order of sale.

(d) If the sale is pursuant to seizure of personal property, the officer conducting the sale shall distribute any excess of proceeds as provided by law for excess proceeds in the case of execution.

*Id.* at § 34.02. The foregoing procedure specifies that the taxing authorities are to receive only taxes, penalties, and interest due. Under subsection (c), any excess is to be paid to the clerk of the court issuing the order of sale. There is no statutory authority under section 34.02 for distribution of *excess* proceeds to any taxing authority. The taxing authorities would only receive excess proceeds if, at the end of seven years, no claimant has established a right to those funds under section 34.03.

Under the terms of the statutes discussed above, if a resale of property which has been "struck off" to the taxing authority is "pursuant to foreclosure of a tax lien," section 34.02(c) affirmatively requires disgorgement of the excess proceeds. The taxing authorities argue that a resale such as this one is not "pursuant to foreclosure of a tax lien." We disagree.

■ The statute in question does not define what "pursuant to foreclosure of a tax lien" means, so we are bound to interpret the words according to their common usage. *See* Tex. Gov't Code Ann. §§ 311.011 & 312.002 (Vernon 1988). According to the common usage of the English language, a sale is "pursuant to foreclosure of a tax lien" if it is a sale consummated "in carrying out" foreclosure of a tax lien. *See, e.g.,* Webster's Third New International Dictionary of the English Language (Unabridged) 1848 (1961). Taxing authorities are not (nor should they be) in the business of buying and selling real estate for profit. The only reason they hold this property at all is "pursuant to" their powers of foreclosure as a taxing entity. The words "pursuant to foreclosure of a tax lien" were not included in the statute to distinguish resales from sales of real property at the time of foreclosure; rather, they were included to distinguish transactions involving liens on real property from transactions involving seizures of personal property which are addressed in subsection (d) of the same code section. *Compare* Tex. Tax Code Ann. §§ 34.02(c) & 34.02(d) (Vernon 1992). We find that a taxing authority that resells property to which it has acquired title by

foreclosure does so "in carrying out" or "pursuant to" the foreclosure of its tax lien.

The taxing authorities criticize this approach by arguing that the taxpayer is better off if he fails to exercise his right of redemption and merely waits for the sales proceeds to roll in. Even if this were sometimes the case, it does not change the wording of the statute. The purpose of a taxing entity is merely to assess and collect revenues, and these code provisions are merely a tool toward that end. Upon the resale of the property, the taxing authority is made whole by its collection of delinquent taxes, costs, interest and penalties from the proceeds of the sale. Tex. Tax.Code Ann. § 34.06 (Vernon 1988). While it is true that the taxing unit can not collect taxes during the time which it holds the property, the taxing authorities themselves control the length of this time. Thus, the effect of the provisions is to encourage taxing authorities to sell the property and return it to the tax rolls as soon as possible.[2]

The dissent would give taxing authorities the right to excess proceeds, in part, because these proceeds "result from the very increase in the market value of the property occurring while the property was held by the taxing authority." 899 S.W.2d at 194. This reasoning ignores the reality that there can be excess proceeds generated even if the property plummets in value while the authorities are holding it. Consider, for example, a property valued at $100,000.00 against which the taxing authorities claim for taxes and costs amounts to $40,000.00. Even if the fair market value of the property declines by 50%, a $10,000 excess fund is created if the property is resold at the $50,000.00 fair market value. Giving the taxpayer who has been deprived, albeit legally, of the use and enjoyment of his property, the right to these proceeds does not seem unreasonable in light of the language chosen by the legislature. If the language as construed is merely unwise, the wisdom or expediency of law is the *sole* prerogative of the legislature. *Smith v.*

*Davis,* 426 S.W.2d 827 (Tex.1968); *Board of Insurance Commissioners of Texas v. Guardian Life Ins. Co. of Texas,* 142 Tex. 630, 180 S.W.2d 906 (1944); *Texas Nat'l Guard Armory Board v. McCraw,* 132 Tex. 613, 126 S.W.2d 627 (1939).

The legislature has expressly allowed the assessment of a 25% penalty in the event that the right of redemption is exercised within the first year after foreclosure, and a 50% penalty if the right is exercised in the second year. Tex. Tax Code Ann. § 34.21 (Vernon 1992). If it was the intent of the legislature to exact an additional penalty upon the taxpayer by granting the taxing authorities the right to profit from the sale of property bought at sales at which it was the only legitimate bidder, we perceive that such a penalty would have been (and should have been) set out explicitly. In this case, the legislature has incorporated a statute which, by its terms, contemplates that once the taxing authority has been made whole, the remainder returns to the taxpayer. If this is not the legislature's intent, it is certainly the legislature's prerogative to make its desires clearer by amendment.

Accordingly, a majority of the Court holds that Sections 34.02 & 34.06 require taxing authorities to deposit the excess proceeds with the registry of the trial court. Although we note that *Booty v. State,* 149 S.W.2d 216 (Tex.Civ.App.—Austin 1941, no writ) was decided well prior to the codification of the language construed in this opinion, to the extent that it is inconsistent with this holding, it is disapproved. We reverse the judgment of the court of appeals and remand to that court for further proceedings consistent with this opinion.

PHILLIPS, Chief Justice, and CORNYN, GAMMAGE, SPECTOR and OWEN, Justices, join.

ENOCH, Justice, joined by GONZALEZ and HECHT, Justices, dissenting.

---

**2.** We note in addition that prior to the expiration of the taxpayer's right of redemption, the taxing unit which purchased the property is forbidden from selling it below the market value specified in the judgment of foreclosure absent the consent of the other taxing units entitled to share in the proceeds. *Id.* at § 34.05(b). Thus, the risk that the property has been assessed at a value out of all proportion to its actual worth also resides with the taxing authorities.

ENOCH, Justice, joined by GONZALEZ and HECHT, Justices, dissenting.

I disagree that sections 34.02 and 34.06 of the Texas Property Tax Code require taxing authorities to deposit with the court excess proceeds from a resale of foreclosed property and permit the former property owner to reclaim those proceeds. Where a legislative enactment is susceptible to more than one interpretation, it should not be given the interpretation that leads to an absurd result. *See Cramer v. Sheppard*, 140 Tex. 271, 167 S.W.2d 147, 155 (1942). The Court's statutory interpretation, thinly supported, leads to an absurd result—one that permits a non-paying taxpayer to recover a windfall at the expense of paying taxpayers. I respectfully dissent.

Under section 34.01(c), when a sufficient bid at a foreclosure sale is not received, the property is sold to the taxing unit for either the aggregate amount of the judgment against the property or the market value, whichever is less. TEX. TAX CODE § 34.01(c). When the property is bid off to the taxing unit as provided in section 34.01(c), the taxing unit takes title to the property for its use and benefit and for all other taxing units with established tax liens in the suit. *Id.* The taxing unit takes title to *all the interest* owned by the delinquent taxpayer, including the delinquent taxpayer's right to the use and possession of the property, and *subject only to the delinquent taxpayer's right of redemption. Id.* Although section 34.01(c) expressly subjects the acquired title to the right of redemption only, the Court erroneously concludes that the title acquired by the taxing unit is also subject to a claim for excess proceeds, citing to *Walsh v. Spencer*, 275 S.W.2d 220 (Tex.Civ.App.—San Antonio 1954, no writ), a case of questionable precedential value for this Court, as the only authority in support of its interpretation.

Section 34.01(c) expressly defines the taxing unit's title to foreclosed property when the property is bid off to the taxing unit. Section 34.01(c) does not provide that the taxing unit's title is restricted by any claim for excess proceeds, and it could not do so logically. When, as in this case, there is not a sufficient bid at a foreclosure sale, there are no excess proceeds against which a claim can be made. The taxing unit acquires title to property subject only to the delinquent taxpayer's right of redemption. Thus, when the property at issue in this case was bid off to KISD in 1988, the delinquent taxpayer had no claim for excess proceeds because there were none. The **only** interest in the property the delinquent taxpayer retained in the property was the right of redemption, which lapsed unexercised.

Despite the fact that under section 34.01(c) the foreclosure sale extinguishes all of the taxpayer's interest in the property save the right of redemption, the Court concludes that sections 34.06(b) and 34.02(c) resurrect an interest in the excess proceeds realized from a resale. In reaching this conclusion, the Court relies on *Webster's Third New International Dictionary of the English Language* as controlling legal authority to establish that the phrase "sale ... pursuant to foreclosure of a tax lien" of section 34.02(c) include within its meaning the resale of property owned by a taxing unit. Even accepting Webster's Dictionary as authority, I fail to see how defining "pursuant to" to mean "in carrying out" clarifies section 34.02(c) in any pertinent way. The ultimate question is whether a resale of property owned by a taxing unit is a sale "pursuant to" or "in carrying out" a foreclosure of a tax lien. Webster's Dictionary simply does not resolve this issue of statutory interpretation.

The Court further relies on the structure of subsections (c) and (d) of section 34.02 in concluding that a resale of property by a taxing unit is a sale "pursuant to foreclosure of a tax lien." Unquestionably, subsections (c) and (d) differentiate between the sale of real and personal property. Subsection (c), however, also differentiates tax lien foreclosure sales from resales by taxing authorities after the tax lien has already been foreclosed. Recognizing that any claim for excess proceeds is extinguished when property is bid off to a taxing unit under section 34.01(c), section 34.02(c) simply limits the distribution of excess proceeds to tax lien foreclosure sales. Consistent with a plain reading of section 34.01(c), which vests title in the taxing unit subject only to the right of

redemption and free of any claim for excess proceeds, the words "pursuant to foreclosure of a tax lien" excludes resales by taxing authorities after the tax lien has already been foreclosed. Sections 34.02(c) and 34.06(b) do not require KISD to deposit any proceeds from the resale to Hall and Kasprzak with the trial court.

The Court's conclusion that there is no statutory authority under section 34.06 for the distribution of "excess" proceeds to any taxing authority, 899 S.W.2d at 191, is plainly erroneous. This conclusion continues the Court's unsupported judicial revision of these provisions to provide for excess proceeds when the Legislature has refused to do so. Section 34.06(a) expressly provides that *the proceeds* of a resale are to be paid to the taxing authority that originally purchased the property at the tax foreclosure sale. Of course, section 34.06 makes no specific provision for distribution of excess proceeds to a taxing authority because that section contemplates, consistent with sections 34.01(c) and 34.02(c), that the proceeds realized from a resale are not "excess proceeds" realized at a tax foreclosure sale.

The Court's interpretation of sections 34.02(c) and 34.06(b) is driven by the erroneous conclusion that the "taxing authority is made whole by its collection of delinquent taxes, costs and expenses of court from the proceeds of the sale." 899 S.W.2d at 192. The Court collapses "sale" and "resale" into one concept. From the sale at foreclosure, the taxing authority in fact cannot be made whole unless there are excess proceeds on resale. The Court somehow views a taxing authority as speculating in the real estate market, holding property it has purchased when the market was low and then selling the property during boom times to maximize the return on its investment. The incentives of the system, however, are not as stated by the Court. To the contrary, the property, while owned by the taxing authority between foreclosure and resale, generates no tax revenue. It is thus in the taxing unit's interest to get the property back on the tax rolls as soon as the market permits. Moreover, as the Court concedes, nothing in Chapter 34 of the Property Tax Code permits the taxing

authority to collect the taxes that would otherwise accrue during the period that it owns the property. 899 S.W.2d at 190. It is only by collecting all proceeds generated on resale of the property that the taxing authority may recoup its lost tax revenue during the period that it held title to the property.

Ignoring this concern, the Court instead concludes that the delinquent taxpayer is entitled to all proceeds in excess of the original tax deficiency realized on resale of the property. While this is illogical to me in the first instance, it approaches the absurd when the excess proceeds result from the very increase in the market value of the property occurring while the property was held by the taxing authority. The Court agrees that this is problematic, 899 S.W.2d at 192, but it misses the point. The delinquent taxpayer failed to pay the taxes that accrued on her property. She lost all her ownership interest in the property, except the right of redemption, when it was foreclosed upon and sold to the taxing unit. After the foreclosure, the delinquent taxpayer had none of the incidents of ownership and more importantly none of the obligations, including the obligation to pay taxes on the property. Because she chose not to redeem the property, she further avoided paying any penalties. Why a delinquent taxpayer should realize the gain in market value on property between the time of foreclosure on her interest and the taxing unit's resale, particularly without her having to pay further taxes or any redemption penalties is not explained by the Court. I suggest it cannot be explained by the Court because there is no principled explanation for bestowing such a windfall on a delinquent taxpayer.

Sections 34.06(b) and 34.02(c) should not and need not be interpreted to require KISD to turn over for the benefit of the delinquent taxpayer the excess proceeds from the resale of the property. I would not do so and therefore respectfully dissent. I would affirm the judgment of the court of appeals.