**Affirmed and Opinion filed May 23, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00663-CV

### RICK D. BATY, Appellant

### V.

### BOWEN, MICLETTE & BRITT, INC., SAMUEL F. BOWEN, DAVID G. MICLETTE, AND EDWARD G. BRITT, JR., Appellees

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2007-38177**

## O P I N I O N

A former employee and shareholder of a corporation appeals a judgment confirming an arbitration award regarding claims between him, on one side, and the corporation and three shareholders, on the other side. The trial court had compelled the former employee and shareholder to arbitrate his claims pursuant to an arbitration provision in a shareholders' agreement. On appeal, the former

employee and shareholder asserts the trial court erred in compelling arbitration over his objection that the opposing parties had waived arbitration by their litigation conduct and over his objection that his claims against the opposing parties are not within the scope of the arbitration provision. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Rick D. Baty was a minority shareholder and employee of appellee Bowen, Miclette & Britt, Inc., a corporation involved in the insurance-brokerage business (the "Company"). Baty signed three agreements with the Company: (1) a Shareholders' Agreement, (2) an Employment Agreement, and (3) a letter agreement between Baty and the Company in which the Company promised to pay Baty part of its recovery, if any, in its lawsuit against Mark Ledger ("Ledger Agreement"). Neither the Employment Agreement nor the Ledger Agreement contains an arbitration provision. The Shareholders' Agreement does.

The Company gave Baty written notice on June 21, 2007, that it was terminating his employment for cause under section 4.01 of his Employment Agreement. The termination was based upon Baty's alleged (1) refusal to obey reasonable orders in a manner that amounts to insubordination, (2) commission of dishonest acts toward the Company or its customers, and (3) engaging in acts of disruption.[1] Baty contends this action was taken to eliminate him as a shareholder and thereby prevent him from making objections to contemplated stock sales by shareholders Samuel Bowen and David Miclette, and to force Baty to sell his shares in the Company to the other shareholders for far less than the actual value of these shares. Because Baty's employment was terminated for a reason other than

---

[1] The Company also relied upon section 4.01(G) of the Employment Agreement, under which the parties agreed that the Company could terminate Baty based upon "[a]ny other reason which [the Company] may, in its sole discretion, determine to be 'good cause' for termination of [Baty]."

death or total disability before Baty attained the age of 62 years, Baty was contractually required to sell, and all of the other shareholders of the Company were required to buy, all of Baty's shares in the Company at a purchase price determined under a formula set forth in section 6.1(c) of the Shareholders' Agreement. Baty refused to accept the purchase price for his shares calculated under this formula.

### Separate Suits Filed by the Company and Baty

The Company filed suit in Harris County District Court, on June 22, 2007, originally seeking only a declaratory judgment that Baty was terminated for good cause under the Employment Agreement. A few months later, on August 7, 2007, Baty filed a separate lawsuit in Harris County District Court against the Company, Samuel F. Bowen, David G. Miclette, and Edward G. Britt, Jr. (collectively, the "Bowen Parties"). In his original petition, Baty alleged that the Company had breached the Employment Agreement by terminating his employment without cause when cause was required. Baty also asserted claims against the individual defendants for breach of fiduciary duty, minority-shareholder oppression, and tortious interference with the Employment Agreement. These two cases were ultimately consolidated in the 333rd District Court, and set for trial for December 1, 2008.

### Events Before the Bowen Parties Moved to Compel Arbitration

In their original answer to Baty's petition, filed September 10, 2007, the Bowen Parties asserted that Baty's claims were based upon the Shareholders' Agreement and that this agreement required arbitration of Baty's claims. In that pleading, the Bowen Parties asked the trial court to compel Baty to submit his claims to arbitration. Although the Bowen Parties made this request in their original answer, they did not file a separate motion to compel arbitration of Baty's

3

claims until eight months later. During this interval the Company amended its pleadings to add claims against Baty for breach of the covenants in the Employment Agreement and Shareholder Agreement that Baty would not solicit customers of the Company. The Company also alleged that Baty breached the Shareholders' Agreement by soliciting the Company's employees to work with him. The Company added claims that Baty used and disclosed the Company's confidential information in violation of his obligations under the Employment Agreement. In addition, the Company asserted common-law claims for misappropriation of trade secrets, breach of fiduciary duty, and tortious interference with contract. And, the Company requested a temporary restraining order and a temporary injunction based upon Baty's alleged violations of the Employment Agreement and the Shareholders' Agreement. The record does not reflect that any court ever ruled on either request for injunctive relief. During the eight months between answering Baty's lawsuit and filing their motion to compel arbitration, the Bowen Parties engaged in a significant amount of discovery.

### *The Bowen Parties' Motion to Compel Arbitration of Baty's Claims*

On May 14, 2008, the Bowen Parties moved the trial court to compel Baty to arbitrate his claims against them based upon the arbitration provision in the Shareholders' Agreement. The Bowen Parties did not seek to compel arbitration as to any of their claims against Baty. In opposing the motion to compel arbitration, Baty argued that the Bowen Parties had waived arbitration by their litigation conduct and that Baty's claims are not within the scope of the arbitration provision. On June 19, 2008, the Bowen Parties amended their petition to delete all claims for breach of the Shareholders' Agreement. On the same day, the Bowen Parties filed a demand for arbitration in which they asserted a claim for breach of the Shareholders' Agreement and sought declaratory relief regarding the rights and

4

obligations of the parties to that agreement. The trial court heard argument from the parties and the motion to compel arbitration was submitted to the trial court for decision on June 20, 2008. During subsequent hearings, the parties informed the court that the Bowen Parties had filed a demand for arbitration. At a hearing on July 20, 2008, the trial judge noted that he agreed that at least some of Baty's claims should go to arbitration.

Meanwhile, the parties continued with discovery, and Baty amended his petition to add the following claims: (1) a claim against the Company for breach of the Ledger Agreement, (2) a claim against the Bowen Parties for their alleged conversion of Baty's shares in the Company, and (3) a claim against the Bowen Parties under the Texas Theft Liability Act for damages caused by their alleged unlawful appropriation of Baty's shares in the Company. In his amended petition, Baty sought, among other remedies, a "buy-out of his shares in [the Company] at fair value." After another hearing on the motion to compel arbitration, the trial court granted the motion on March 10, 2009. The trial court ordered all of Baty's claims against the Bowen Parties to arbitration and stayed the Bowen Parties' claims against Baty.

### *Arbitration Award*

The arbitrator issued an award in March 2011 (the "Award"). In the Award, the arbitrator declined to consider Baty's claims for breach of the Employment Agreement and for tortious interference with the Employment Agreement, concluding that the trial court, rather than the arbitrator, should determine those claims. The arbitrator ruled in Baty's favor on his claim for breach of the Ledger Agreement. The arbitrator denied Baty recovery on his claims for breach of fiduciary duty, minority-shareholder oppression, violation of the Texas Theft Liability Act, conversion, conspiracy, and restitution. The arbitrator ruled in the

Bowen Parties' favor on their claims for declaratory relief and for breach of the Shareholders' Agreement. The arbitrator found that, under section 6.1(c) of the Shareholders' Agreement, Baty was required to sell his shares in the Company to the remaining shareholders for $1,211,358.

### *Trial Court's Confirmation of the Arbitration Award*

Baty filed a motion in the trial court to confirm the Award regarding his claim for breach of the Ledger Agreement and to vacate the remainder of the Award. The Bowen Parties moved to vacate the Award as to Baty's claim for breach of the Ledger Agreement, to confirm the remainder of the Award, and to grant a severance to make the judgment on the arbitrated claims final. The trial court confirmed the Award in its entirety. To make the judgment final and appealable, the trial court then severed and stayed the claims that were never ordered to arbitration and the claims that the arbitrator declined to consider.

## II. ISSUES AND ANALYSIS

On appeal, Baty asserts that the trial court erred in compelling arbitration over his objection that the Bowen Parties had waived arbitration by their litigation conduct and over his objection that his claims against the Bowen Parties are not within the scope of the arbitration provision.

**A.    Did Baty preserve error as to his waiver argument regarding the Bowen Parties' affirmative claims for relief in the arbitration proceeding?**

As a threshold matter, we consider whether Baty preserved error as to his waiver-of-arbitration argument regarding the affirmative claims for relief that the Bowen Parties asserted in the arbitration (claims for declaratory relief regarding the Shareholders' Agreement and for breach of the Shareholders' Agreement). Though the Company, but not the individual defendants, did assert a claim for breach of the Shareholders' Agreement from October 2007 through June 2008, the

6

Bowen Parties never moved to compel arbitration of this claim or any of the Company's claims for affirmative relief in the trial court. A month after moving to compel arbitration, the Company amended its petition to drop the claims for breach of the Shareholders' Agreement, and it asserted these claims and other affirmative claims in the demand for arbitration. In sum, the record reflects that the Bowen Parties never moved to compel arbitration on any of their affirmative claims and that Baty did not seek to enjoin arbitration of these affirmative claims on any ground, including waiver of arbitration.

The Supreme Court of Texas has concluded that courts, not arbitrators, decide whether parties have waived arbitration by their litigation conduct. *See Perry Homes v. Cull*, 258 S.W.3d 580, 587–89 (Tex. 2008). Baty did move to vacate the arbitration award as to these claims based upon waiver of arbitration, but waiver of arbitration is not a valid basis for vacating an arbitration award, under either the Federal Arbitration Act or the Texas Arbitration Act. *See Ewing v. ACT Catastrophe-Texas L.C.*, 375 S.W.3d 545, 552–53 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). A respondent defending against claims in arbitration can preserve error as to an argument that the claimant waived arbitration of its claim through its litigation conduct by asking a court to enjoin the arbitration based upon this alleged waiver. *See Grigsby & Assocs., Inc. v. M Securities Investment*, 664 F.3d 1350, 1351–54 (11th Cir. 2011). Baty did not seek to enjoin arbitration of the claims asserted against him by the Bowen Parties. Therefore, we conclude that Baty failed to preserve error in the trial court as to his argument on appeal that the Bowen Parties waived arbitration as to the claims they asserted against Baty in the arbitration. *See Perry Homes*, 258 S.W.3d at 587–89; *Ewing*, 375 S.W.3d at 55; *Grigsby & Assocs., Inc.*, 664 F.3d at 1351–54.

After excluding these claims from consideration, as well as Baty's claim for

breach of the Ledger Agreement (which Baty is not challenging on appeal) and the claims that were severed from this case to make the judgment final, the following claims remain for consideration under Baty's first issue as to whether the trial court erred in compelling arbitration over his objection of waiver: Baty's claims for breach of fiduciary duty, minority-shareholder oppression, violation of the Texas Theft Liability Act, conversion, conspiracy, and restitution ("Remaining Claims").[2]

**B.      Did the Bowen Parties waive their right to arbitrate the Remaining Claims by substantially invoking the judicial process?**

In his first issue, Baty asserts that the Bowen Parties waived their right to arbitrate the Remaining Claims by substantially invoking the judicial process to Baty's prejudice. A party waives a right to arbitration by substantially invoking the judicial process to the other party's detriment or prejudice. *Perry Homes*, 258 S.W.3d at 589–90. Baty has the burden of proving that the Bowen Parties waived their right to arbitration and, due to the strong presumption against waiver of arbitration, this is a difficult burden to satisfy. *See id*. at 590. Whether a party has waived arbitration must be decided on a case-by-case basis, based upon an examination of the totality of the circumstances. *See id*. at 591. In making this determination, courts consider a wide variety of factors including the following:

- whether the party who pursued arbitration was the plaintiff or the defendant;
- how long the party who pursued arbitration delayed before seeking arbitration;
- when the party who pursued arbitration learned of the arbitration clause's existence;
- how much the pretrial activity related to the merits rather than arbitrability or jurisdiction;

---

[2] We presume, without deciding, that Baty alleged claims for conspiracy and restitution against the Bowen Parties in his First Amended Petition.

8

- how much time and expense has been incurred in litigation;
- whether the party who pursued arbitration sought or opposed arbitration earlier in the case;
- whether the party who pursued arbitration filed affirmative claims or dispositive motions;
- how much discovery has been conducted and who initiated the discovery;
- whether the discovery sought would be useful in arbitration;
- what discovery would be unavailable in arbitration;
- whether activity in court would be duplicated in arbitration;
- when the case was to be tried; and
- whether the party who pursued arbitration sought judgment on the merits.

*See id*. at 591–92.

The quantum of litigation conduct that will be deemed "substantial" depends very much on the context. *See id*. at 593. A party who enjoys significant direct benefits by gaining an advantage in the pretrial litigation process should be barred from turning around and seeking arbitration with the spoils. *See id*. Like any other contract right, arbitration can be waived if the parties agree instead to resolve a dispute in court. *See id*. This type of waiver can be implied from a party's conduct, when that conduct is unequivocal. *See id*. In close cases, the "strong presumption against waiver" should govern. *See id*.

In the context of waiver of an arbitration right, "prejudice" relates to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue. *See id*. at 597. Whether a party's conduct constitutes a waiver of an arbitration right is a question of law that this court reviews de novo. *See id*. at 598. If the trial court resolves factual disputes as to the conduct in which the party in question engaged, then this court defers to the trial court's fact findings if they are supported by sufficient evidence. *See id*.

9

As to the Remaining Claims, the Bowen Parties were the defendants. The Company did file suit first as plaintiff, but it asserted claims that no party has asserted were arbitrable. Baty then filed suit as plaintiff against the Bowen Parties, asserting potentially arbitrable claims. In their original answer in response to these claims, the Bowen Parties asserted that Baty's claims were based upon the Shareholders' Agreement and that this agreement required arbitration of Baty's claims. In their answer, the Bowen Parties asked the trial court to compel Baty to submit his claims to arbitration. The already heavy burden of demonstrating waiver of arbitration "falls even more heavily" upon the party asserting waiver when the party seeking arbitration included a demand for arbitration in its original answer. *See In re H&R Block Financial Advisors, Inc.*, 262 S.W.3d 896, 901 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding); *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420–21 (5th Cir. 1985); *General Guaranty Ins. Co. v. New Orleans General Agency, Inc*., 427 F.2d 924, 929 n.5 (5th Cir. 1970).

Weighing in favor of waiver is the Company's conduct from October 2007 through June 2008 of asserting claims against Baty for breach of Baty's non-solicitation covenants in the Employment Agreement and Shareholders' Agreement. The Company alone was the plaintiff in these claims, which, as to the Employment Agreement, no party has asserted were arbitrable, but, as to the Shareholders' Agreement, were indisputably arbitrable. The Company alleged that Baty had breached provisions of the Shareholders' Agreement and of the Employment Agreement under which Baty agreed that he would not solicit business from the Company's customers during the two-year period following termination of his employment. In June of 2008, the Company dropped the arbitrable claims that they were asserting in litigation and asserted these claims in their demand for arbitration. The Bowen Parties delayed eight months from the filing of their original answer to the filing of their motion to compel arbitration.

This is not a case in which the Bowen Parties did not learn of the arbitration provision of the Shareholders' Agreement until after significant litigation activity had occurred. They were aware of the arbitration provision at the beginning of the litigation, at least by September 10, 2007, when they filed their original answer. The overwhelming majority of the Bowen Parties' pretrial activity related to the merits rather than arbitrability or jurisdiction, although some of the pending claims were not subject to arbitration.

At times, Baty indicates that the appropriate time frame for the waiver-of-arbitration analysis is from June 2007, when the Company filed suit, through March 2009, when the trial court compelled arbitration of Baty's claims against the Bowen Parties. Though the Bowen Parties continued their pretrial activities after they filed their motion to compel arbitration, at a March 3, 2009 hearing on this motion, the trial court indicated that the delay in ruling on the motion to compel arbitration was "my fault, by the way, not yours." This stance is consistent with the approach taken by federal courts to this issue. *See, e.g.*, *Tenneco Resins, Inc.*, 770 F.2d at 418, 420–21 (noting that trial court said it would not give significant consideration in the waiver-of-arbitration analysis to litigation conduct that occurred after the party moved to stay the litigation pending arbitration and adopting a similar approach on appeal). Though we consider all the facts and circumstances reflected by the record, we conclude that the most important time frame for purposes of the waiver analysis is the eight months between September 10, 2007, when the Bowen Parties first made an appearance in litigation involving potentially arbitrable claims, and May 14, 2008, when the Bowen Parties moved to compel arbitration (the "Period").

Baty asserts that he had incurred $350,000 in attorney's fees by the time the Bowen Parties moved to compel arbitration and $700,000 in attorney's fees by the time the trial court granted this motion. In support of these assertions, Baty cites

11

only documents attached to his motion to vacate, in part, the Award. But, waiver of arbitration is not a valid basis for vacating an arbitration award, either under the Federal Arbitration Act or the Texas Arbitration Act. *See Ewing*, 375 S.W.3d at 552–53. Thus, in Baty's first issue, this court is reviewing the trial court's ruling on the Bowen Parties' motion to compel arbitration, and we may not consider these documents cited by Baty regarding his attorney's fees because they were not before the trial court when it granted the motion to compel arbitration. *See Univ. of Tex. v. Morris*, 344 S.W.2d 426, 429 (Tex. 1961) (holding that appellate court, in determining correctness of a trial court ruling, does not consider events that occurred subsequent to the ruling unless they deprive the appellate court of jurisdiction); *Stephens County v. J.N. McCammon, Inc.*, 52 S.W.2d 53, 55 (Tex. 1932) (stating that "[w]hen an appellate court is called upon to revise the ruling of a trial court, it must do so upon the record before that court when such ruling was made").

The record before the trial court when it granted the motion to compel arbitration included an affidavit of one of Baty's lawyers, who testified that Baty was invoiced for his lawyers' services in July, August, and September 2007, at an hourly rate. The total of the three invoices was $54,363.50 in fees and $1,682.31 in expenses. The lawyer did not address whether Baty paid any part of these three invoices. After the issuance of these invoices, Baty and his law firm agreed to switch to a contingency-fee agreement. Thus, in September 2007, the month in which the Bowen Parties filed their answer, Baty shifted to an unspecified contingency-fee arrangement. Baty produced no evidence that he actually paid (1) any attorney's fees for services rendered by his attorneys, or (2) any litigation costs or expenses. Baty's contingency-fee contract is not in the record, and there is no evidence that the amount of the contingency fee increased because the Bowen Parties did not file their motion to compel arbitration until May 14, 2008. The

Bowen Parties did not oppose arbitration earlier in the case, and they actually requested arbitration of Baty's claims in their original answer.

Weighing against waiver, the Bowen Parties did not file any dispositive motions on the merits of any claims that they sought to arbitrate. On the other hand, the Company (but not the individual defendants) filed affirmative claims for breach of the Shareholders' Agreement. In June of 2008, the Company dropped the arbitrable claims that it was asserting in litigation and asserted these claims in a demand for arbitration. These claims were not the subject of the Bowen Parties' motion to compel arbitration.

The Bowen Parties engaged in considerable discovery and also resisted discovery during the Period. They filed seven motions to quash depositions. They opposed two motions to compel and filed a motion to compel and a motion for protective order. They requested disclosures, served four sets of requests for production and four sets of interrogatories, and subpoenaed four third-party witnesses seeking documents. They took the deposition of Baty and six other witnesses, for a total amount of deposition time of approximately 10.75 hours. The limit on the Bowen Parties' total deposition time was 50 hours. *See* Tex. R. Civ. P. 190.3(b)(2). Baty initiated some of the discovery, but the Bowen Parties initiated most of it. Based upon the record, it appears that nearly all of the discovery related to both Baty's claims that the trial court later ordered to arbitration and to the Company's claims that nobody argues were subject to arbitration. We presume for the sake of argument that the discovery sought would be useful in arbitration. Requests for production, interrogatories, requests for disclosure, and depositions were available in the arbitration. The arbitrator placed a 15-hour aggregate limit on deposition time for each side and provided that this limit could not be exceeded absent agreement of the parties or leave of the arbitrator. Some activity in the trial court would be duplicated in arbitration.

13

When the Bowen Parties filed their motion to compel arbitration, there were five-and-a-half months remaining before trial. The Bowen Parties did not seek judgment on the merits by means of a dispositive motion, but the Company did assert affirmative claims for relief before dropping these claims and pursuing them in arbitration.

Filing suit, by itself, does not constitute a waiver of arbitration rights. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (orig. proceeding). Nor does delay in seeking arbitration, alone, establish waiver. *See In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763–64 (Tex. 2006) (finding no waiver of arbitration despite parties' engaging in litigation for two years before seeking to arbitrate).

Baty asserts that the Bowen Parties applied for relief on the merits of the non-compete provisions of the Shareholders' Agreement to test the court's reaction and then decided to switch forums. This assertion is not supported by the record. Baty asserts that the Bowen Parties requested a temporary restraining order and temporary injunction based upon Baty's alleged breach of the Shareholders' Agreement. The record reflects that this claim was added to the Bowen Parties' petition on October 2, 2007. Baty, citing a notice reflecting that a hearing on the Bowen Parties' application for temporary injunction was set for October 15, 2007, asserts that, after the ancillary judge refused to grant a temporary restraining order, the Bowen Parties amended their petition to delete their request for injunctive relief. Our appellate record does not contain a reporter's record from any hearing before the ancillary judge in October 2007 regarding the Bowen Parties' application for a temporary restraining order. At a subsequent hearing, the lawyers for both sides refer to this hearing but they disagree over what transpired. On this record, we cannot determine whether the Bowen Parties were testing the reaction of the ancillary judge. Given the short duration of temporary restraining orders

14

and the fact that the judge of the trial court (not the ancillary judge) rules on applications for temporary injunctions, any effort to test the reaction of a judge more likely would have been directed to the presiding judge of the trial court at the temporary-injunction hearing. The record reflects that the Bowen Parties did not go forward with the hearing on their application for temporary injunction in October 2007. Instead, they deleted the requests for injunctive relief from their petition at that time.

Baty also suggests that the Bowen Parties engaged in manipulation of the judicial process and forum shopping in July and August of 2008, when the Company added back claims for injunctive relief based upon Baty's alleged breach of the Employment Agreement. Baty asserts that the trial court expressed grave concerns about granting this relief and declined to grant a temporary injunction. Significantly, at this juncture, the Bowen Parties were seeking in arbitration declaratory relief and damages based upon Baty's alleged breach of the Shareholders' Agreement. No claims by the Bowen Parties regarding the Shareholders' Agreement were pending in the trial court, and the Bowen Parties had moved to compel arbitration as to Baty's claims. In this context, the Bowen Parties' attempts to obtain a temporary injunction based upon the Employment Agreement do not show manipulative conduct or forum shopping. When the Company was unsuccessful in obtaining a temporary injunction in the trial court, it did not seek injunctive relief regarding the Employment Agreement in the arbitration, and it never sought injunctive relief regarding the Shareholders' Agreement in arbitration. Thus, Baty's assertion that the Bowen Parties tested the trial court's reaction and then moved the claims to the arbitration proceeding is not supported by the record.

Baty relies upon the *Perry Homes* case. *See Perry Homes*, 258 S.W.3d at 589–97. In *Perry Homes*, the plaintiff filed a lawsuit, vigorously opposed the defendants' request for arbitration at the beginning of the litigation, conducted "full discovery," and then moved to compel arbitration only on the eve of trial. *See id*. at 585, 590. In the case under review, the Bowen Parties are defendants in the Remaining Claims. The Bowen Parties never opposed arbitration; rather, they requested it in their original answer and in their motion to compel arbitration filed eight months later. Though the Bowen Parties conducted considerable discovery, they had not conducted "full discovery" when they moved to compel arbitration, and they did not wait until the eve of trial to file the motion to compel arbitration.

Baty cites *Nicolas v. KNR, Inc.*, 565 F.3d 904, 908–09 (5th Cir. 2009), for the proposition that the Company substantially invoked the judicial process by asserting as plaintiff arbitrable claims for breach of the Shareholders' Agreement without asserting the arbitration clause and without an exception that would justify this conduct. Significantly, the *Nicolas* court states that "Nicolas's decision to file suit on her otherwise arbitrable claims constitutes substantial invocation of the judicial process *as to those claims*." *Id*. at 909 (emphasis added). Presuming, without deciding, that this court would follow the rule in *Nicolas*, that rule would apply only to the Company's claims for breach of the Shareholders' Agreement. *See id*. But, as discussed above, the only claims at issue under the first issue are the Remaining Claims, which were filed by Baty, not the Bowen Parties. Thus, the *Nicolas* case is not on point.[3] *See id*.

---

[3] Likewise, other cases upon which Baty relies have materially different facts. *See, e.g.*, *In re Mirant*, 613 F.3d 584, 589–90 (5th Cir. 2010) (waiving party filed three motions to dismiss plaintiff's claims, the last of which sought dismissal with prejudice and was partially granted), *Republic Ins. Co. v. Paico Receivables, LLC*, 383 F.3d 341, 345–46 (5th Cir. 2004) (waiving party filed motion for summary judgment, a motion in limine seeking to limit evidence that opposing party could introduce at trial, argued that all of the issues in the case were properly

16

The facts and circumstances of this case are quite complicated and involve factors weighing in favor of a finding that the Bowen Parties substantially invoked the judicial process and factors weighing against such a finding. We conclude that this is a close case, and therefore, the "strong presumption against waiver" should govern. *See Perry Homes*, 258 S.W.3d at 593. Under the applicable legal standard, we conclude that the Bowen Parties did not substantially invoke the judicial process. *See In re Automated Collection Technologies, Inc*., 156 S.W.3d 557, 559 (Tex. 2004) (holding, under analogous analysis, that party did not waive forum-selection clause by substantially invoking the judicial process to opposing party's prejudice, in case in which party participated in litigation for four months before seeking arbitration, served requests for disclosure, requests for production, requests for admissions, and interrogatories, and filed a motion to compel discovery) (orig. proceeding) (per curiam); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89–90 (Tex. 1996) (holding that party did not waive arbitration right by answering the suit, participating in docket control conference, propounding requests for production and interrogatories, noticing plaintiff's deposition, and entering into an agreed order to reset the original trial date) (per curiam); *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576–78 (5th Cir. 1991) (holding that party did not waive arbitration right by propounding interrogatories and requests for production, attending initial pretrial conference, and delaying thirteen months before filing motion to compel arbitration); *Tenneco Resins, Inc.*, 770 F.2d at 420–21 (holding that party did not waive arbitration right despite serving opponent

before the trial court, and waited until days before trial to assert a motion to compel arbitration); *Adams v. Staxxring, Inc*., 344 S.W.3d 641, 647–49 (Tex. App.—Dallas 2011, pet. denied) (waiving party obtained temporary restraining order and did not move to compel arbitration until 13 months after filing answer); *PRSI Trading Co. v. Astra Oil Trading NV*, No. 01-10-00517-CV, 2011 WL 3820817, at *2–3 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, pet. denied) (waiving party conditioned trial court's consideration of motion to compel arbtitration on party's lack of success on motion for summary judgment).

with interrogatories and requests for production, seeking discovery protective order, and agreeing to a joint motion for extension of the discovery period, during eight months before moving to compel arbitration). The trial court did not err in concluding that the Bowen Parties did not waive their right to arbitrate the Remaining Claims when the court granted the Bowen Parties' motion to compel. Accordingly, we overrule Baty's first issue.[4]

## C.  Are the Remaining Claims within the scope of the arbitration provision?

In his second issue, Baty asserts that the trial court erred in compelling arbitration of the Remaining Claims over his objection that these claims are not within the scope of the arbitration provision in the Shareholders' Agreement. Baty does not dispute that this arbitration provision is valid. In determining the scope of the arbitration provision, we begin by briefly reviewing various other provisions of the Shareholders' Agreement, a contract signed by the Company, Baty, and the individual defendants, as well as the other shareholders of the Company. The parties agree that the Shareholders' Agreement "shall cover any stock now owned or hereafter acquired by the Shareholders while [the Shareholders' Agreement] remains in effect." Section 1.3 of the Shareholders' Agreement provides as follows:

> Effect of Attempted Disposition of Shares in Violation of Shareholder Agreement. It is expressly understood and agreed that no sale, conveyance, transfer, or disposition of any of the Shares owned by a Shareholder may be made without compliance with the terms, conditions and provisions hereof. Any disposition in contravention of the foregoing and not made in strict compliance with the provisions hereof shall be null and void and of no force and effect *ab initio*.

---

[4] Even if Baty had preserved error as to the claims the Bowen Parties asserted against him in the arbitration, we still would conclude that the Bowen Parties did not substantially invoke the judicial process.

18

As used in the agreement, the term "Disposition" is defined to include "any inter vivos or other transfer, pledge or other encumbrance, or any other sale, conveyance, assignment of rights, hypothecation or disposition of any of the Shares whatsoever, whether voluntary or involuntary." [5]

Under the Shareholders' Agreement, a shareholder whose employment by the Company is terminated voluntarily or involuntarily for any reason other than death or total disability before attaining the age of 62 years shall be required to sell, and all of the other shareholders of the Company shall be required to buy, all of the shares of this terminated shareholder at the purchase price determined under a formula set forth in section 6.1(c) of the Shareholders' Agreement. Under section 3.6, closings of purchases and sales of shares pursuant to the foregoing requirements, unless otherwise agreed in writing by the parties, shall be held at the Company's principal offices on the tenth day following the date that the shareholder whose shares are to be purchased ceases to be an employee of the Company, unless such date is a Saturday, Sunday, or legal holiday, in which case the closing shall be held on the next business day which is not a Saturday, Sunday, or legal holiday.

The parties to the Shareholders' Agreement agree that "[a]ny controversy or claim arising pursuant to this Agreement shall be submitted to and resolved by a single arbitrator. . . ." Any doubts as to whether the claims in question fall within

---

[5] The Shareholders' Agreement provides that, notwithstanding this definition, the Shareholders' Agreement does not prohibit the following transfers of Shares: (1) "a transfer of ownership of Stock to any party who is a Shareholder immediately prior to such transfer," (2) "a transfer of Stock by any Shareholder to any employee of the [Company] with the prior written consent of the majority of the members of the [Company's] Board of Directors and of Shareholders owning a simple majority of the [Company's] issued and outstanding Shares immediately prior to the time of such transfer," and (3) "the issuance by the [Company] of Stock to any party with the prior written consent of the majority of the members of the [Company's] Board of Directors and of Shareholders owning a simple majority of the [Company's] issued and outstanding Shares immediately prior to the time of such transfer."

19

the scope of the arbitration clause must be resolved in favor of arbitration. *See Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995). A court should not deny arbitration unless the court can say with positive assurance that an arbitration clause is not susceptible of an interpretation that would cover the claims at issue. *Id.* In determining whether a claim falls within the scope of an arbitration agreement, the court must focus on the factual allegations, rather than the legal claims asserted. *Id.* at 900. The presumption of arbitrability is particularly applicable when the clause is broad; that is, it provides for arbitration of "any dispute arising between the parties," or "any controversy or claim arising out of or relating to the contract thereof," or "any controversy concerning the interpretation, performance or application of the contract." *See Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 230 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

If the arbitration clause is broad, absent any express provision excluding a particular grievance from arbitration, only the most forceful evidence of purpose to exclude the claim from arbitration can prevail. *See Marshall*, 909 S.W.2d at 900; *Osornia v. Amerimex Motors & Controls, Inc.*, 367 S.W.3d 707, 712 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Nonetheless, the strong policy in favor of arbitration cannot serve to stretch a contractual clause beyond the scope intended by the parties or to allow modification of the unambiguous meaning of the arbitration clause. *See Osornia, Inc.*, 367 S.W.3d at 712.

Baty asserts that the arbitration provision is narrow, and the Bowen Parties assert that the provision is broad. We presume for the purposes of our analysis that the provision is a narrow clause. Under precedent from the Supreme Court of Texas, "pursuant to" means "in carrying out" and thus the parties agreed to arbitrate any controversy or claim arising "in carrying out" the Shareholders' Agreement. *See Syntax, Inc. v. Hall*, 899 S.W.2d 189, 191–92 (Tex. 1995).

20

As to Baty's claims against the Bowen Parties for breach of fiduciary duty, minority-shareholder oppression, violation of the Texas Theft Liability Act, conversion, conspiracy, and restitution, the factual allegations for these claims are overlapping. Baty alleges that the three individual defendants conspired to oppress and "eliminate" him because he was trying to exercise his shareholder rights to stop the planned sale of stock by two of the shareholders to shareholder Britt. Baty alleges wrongful conduct based upon his alleged wrongful discharge. But, Baty also bases these claims on the conduct in paragraph 18 of his First Amended Petition, in which he alleged that, despite the termination of his employment more than a year earlier, he still owned his shares in the Company and had not consented to the sale of these shares. Baty asserted that the individual defendants breached their respective fiduciary duties by engaging in "oppressive and wrongful conduct" that Baty alleged in the "factual background" section of his petition. In his minority-shareholder-oppression claim, Baty alleged that the conduct of the individual defendants was "calculated to frustrate and deny [Baty's] legitimate expectations and ability to enjoy the benefits of his ownership interest in [the Company]." Baty held this ownership interest subject to the terms and restrictions of the Shareholders' Agreement.

Baty alleged that the Bowen Parties were wrongfully denying him his rights as owner of these shares in the Company. In the conversion claim and claim for violation of the Texas Theft Liability Act, Baty alleged wrongful exercise of dominion and control and unlawful appropriation of these shares. These allegations conflict with the unambiguous language of Article III of the Shareholders' Agreement, under which Baty had to sell his shares to the other shareholders within ten days of the termination of his employment, whether or not the termination was for cause. In carrying out the Shareholders' Agreement, Baty was required to sell all of his shares in the Company to the remaining shareholders

21

in early July 2007, at the purchase price determined under the formula set forth in section 6.1(c). But Baty refused to sell his shares at the purchase price set by the Shareholders' Agreement. Instead, he argued that he was entitled to a substantially higher purchase price based upon fair market value. Baty sought to recover this higher fair market value price through the forced buy-out remedy that he sought based upon his Remaining Claims. In effect, Baty alleged that the Bowen Parties' insistence that the provisions of the Shareholders' Agreement be carried out constituted oppressive or wrongful conduct by which the Bowen Parties sought to deprive him of the benefits of his ownership of shares in the Company. Given the relationship of the Remaining Claims to the subject matter of the Shareholders' Agreement, we conclude that the Remaining Claims are controversies or claims arising "in carrying out" or "pursuant to" the Shareholders' Agreement. *See Syntax, Inc.*, 899 S.W.2d at 191–92.

Baty relies upon *Tracer Research Corp. v. National Environmental Services Company*, 42 F.3d 1292, 1294–95 (9th Cir. 1994), a case that involved a clause requiring arbitration of "any controversy or claim arising out of this Agreement," language different from the arbitration provision in the Shareholders' Agreement. *Id.* at 1295. In addition, the *Tracer Research Corp.* court held the clause in that case required arbitration of "those disputes 'relating to the interpretation and performance of the contract itself.'" *Id.* Even if this case were on point, the Remaining Claims relate to the interpretation and performance of the Shareholders' Agreement. For support, Baty cites this court's opinion in *Osornia*. *See Osornia, Inc.*, 367 S.W.3d at 711–15. The clause at issue in *Osornia* required arbitration of all claims "arising out of" a settlement agreement, and the claims at issue were based upon conduct that allegedly occurred before the settlement agreement was even signed. *See id.* at 712–13. Thus, *Osornia* is not on point. Baty also cites *Weber v. Hall. See* 929 S.W.2d 138, 142–42 (Tex. App.—Houston

22

[14th Dist.] 1996, orig. proceeding). In *Weber*, the clause required arbitration of all disputes "as to all or any part of" various employment agreements, and the claims at issue were based upon the payment of sales commissions which the *Weber* court held were the subject of separate agreements and not the subject of the employment agreements. *See id.* The *Weber* case is not on point.

Even presuming that the arbitration provision is a narrow one, the Remaining Claims still fall within the scope of the clause. *See Syntax, Inc.*, 899 S.W.2d at 191–92. Therefore, the trial court did not err in compelling arbitration of the Remaining Claims over Baty's objection that these claims do not fall within the scope of the arbitration provision. Accordingly, we overrule Baty's second issue.

### III. CONCLUSION

Considering all the many facts and circumstances of this complicated case under the applicable legal standard, we find factors weighing in favor of a finding that the Bowen Parties substantially invoked the judicial process and factors weighing against such a finding. Applicable cases stress the strong presumption against waiver, especially when the parties seeking arbitration requested arbitration in their original answer. The Supreme Court of Texas has instructed that in a close case we should conclude that the heavy burden of showing waiver of arbitration has not been satisfied. Therefore, in this close case, we conclude that the trial court did not err by impliedly finding that the Bowen Parties did not waive their rights to arbitration. We also conclude that, because the Remaining Claims are within the scope of the arbitration provision in the Shareholders' Agreement, the trial court did not err in compelling arbitration of the Remaining Claims over Baty's objection that these claims do not fall within the scope of this provision.

23

The judgment of the trial court is affirmed.


/s/    Kem Thompson Frost
Justice

Panel consist of Justices Frost, Brown, and Christopher.