**Reversed and Remanded and Opinion filed September 11, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00047-CV

**GREENBERG TRAURIG, LLP, Appellant**

**V.**

**NATIONAL AMERICAN INSURANCE COMPANY AND OKIE FOUNDATION DRILLING CO., INC., Appellees/Cross-Appellants**

**V.**

**FISHERBROYLES, LLP AND RUSSELL DEPALMA, Cross-Appellees**

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-39837**

### O P I N I O N

Greenberg Traurig, LLP, appeals the trial court's order denying its motion to compel arbitration. In a cross-point, National American Insurance Company and Okie Foundation Drilling Co. conditionally appeal a separate order denying their alternative motion to compel arbitration among FisherBroyles, LLP and Russell DePalma. For the reasons stated below, we reverse the trial court's orders.

BACKGROUND

This appeal primarily concerns the enforceability of an arbitration provision in Greenberg's retainer agreement with National American Insurance Company (NAICO) and Okie Foundation Drilling Co., Inc. The parties entered into the agreement after Okie, a NAICO insured, suffered an adverse judgment at trial in a wrongful-death tort action. NAICO sought and retained Greenberg for Okie's appeal from the adverse judgment.

## A. The Retainer Agreement

NAICO's General Counsel and Senior Vice President, Pat Gilmore, decided to hire Robert DePalma, of Greenberg, on a flat-fee arrangement. Stephen Carlin, another Greenberg attorney, had represented NAICO in litigation matters for Greenberg dating back to 2005. Because the Okie appeal was the first time Greenberg and NAICO had entered into a flat-fee arrangement, Carlin recommended to Gilmore that the parties execute a formal retainer agreement. DePalma prepared the first draft of the retainer agreement based on Greenberg's standard forms.

On December 22, 2010, DePalma sent the first draft of the agreement to Gilmore. DePalma asked Gilmore to "[p]lease review and, if you agree, sign [the agreement] as appropriate. If you have any questions, please contact me." Gilmore responded that the agreement "[l]ooked fine to me," but that he was "just waiting for Evans' OK on your engagement letter." Rick Evans, the Senior Vice President of Claims at NAICO, reviewed the agreement and asked questions about the fee structure. Gilmore communicated Evans' concerns to DePalma, and DePalma made the requested changes.

On January 7, 2011, DePalma sent the revised agreement to Gilmore. DePalma's e-mail stated that Greenberg "made some adjustments: (1) you

indicated you wanted a defined trigger for extra work, so I inserted one, [and] (2) we also needed to add some language on the arbitration portion that worked for the joint representation . . . ." Specifically, Greenberg altered the arbitration provision to clarify that NAICO would be "speaking for both NAICO and for Okie" in the joint representation agreement.

The arbitration language in the executed agreement appears in a separate section titled "Arbitration," and reads:

> By signing this letter, Clients agree that, to the extent permitted by law, any dispute arising out of or relating to this Agreement, our relationship, any billing statements forwarded to Clients or our services, including but not limited to any alleged claims for legal malpractice, breach of fiduciary duty, fraud, breach of contract or other claim against the Firm for any alleged inadequacy of such services, shall be resolved by submission to confidential, final, binding arbitration in Dallas, Texas . . . .

The agreement further reads:

> **If Clients agree to arbitration, they will also be agreeing to waive any right to a jury or court trial.** If the clients do <u>not</u> wish to agree to arbitration of any disputes, claims, or controversies, please draw a line through and initial this paragraph. . . . By executing this engagement agreement without striking through the arbitration clause above, NAICO further warrants and represents the following: NAICO is authorized to execute and bind Okie Foundation Co., Inc. to the arbitration provision above in accordance with any insurance agreements governing the NAICO-Okie business relationship.

(Emphasis in original).

After the agreement was executed, DePalma left Greenberg to join the law firm of FisherBroyles, LLP on August 1, 2011. On August 9, 2011, DePalma sent an engagement letter to NAICO to retain his services as a member of FisherBroyles. Neither DePalma, at FisherBroyles, nor any attorney from

Greenberg timely filed a notice of appeal for the Okie appeal. On August 31, 2011, DePalma informed NAICO that the failure to file a notice of appeal made it impossible for Okie to perfect its appeal.

## B. The Trial Court's Order Denying Greenberg's Motion to Compel Arbitration

Because of the parties' failure to file a notice of appeal, NAICO filed suit against DePalma, FisherBroyles, and Greenberg for negligence and breach of fiduciary duty. Greenberg moved to compel arbitration among all parties under the Texas Arbitration Act (the TAA). The trial court denied Greenberg's motion to compel arbitration and issued an order detailing its findings.

As to Okie, the trial court held that, "[Okie] is not a signatory in any way to the arbitration agreement, and should not, therefore, be compelled to arbitrate." Similarly, the trial court signed a separate order denying Greenberg's motion and NAICO and Okie's alternative motion to compel DePalma and FisherBroyles to arbitrate.

As to NAICO, the court concluded that the arbitration provision was unenforceable because "a longstanding fiduciary relationship existed between [Greenberg] and attorney Steve Carlin, on the one hand, and NAICO on the other hand before the contract for legal services was entered into." The court held that, "[i]n light of this longstanding fiduciary relationship, [Greenberg] and Carlin had an exceedingly high duty of disclosure," and they failed to meet that duty by disclosing the arbitration provision to NAICO. The court determined that Greenberg failed to meet this duty of disclosure in several ways, and stated its findings as follows:

- This was the first contract between the parties in their longstanding relationship which contained an arbitration clause;

- [Greenberg] and Carlin failed to adequately call NAICO's attention to the arbitration clause despite it being contained on page 6 of a 10 page legal agreement;

- [Greenberg] and Carlin knew or should have known that NAICO did not like or favor arbitration clauses;

- In fact, [Greenberg] and Carlin knew that NAICO avoided arbitration agreements unless they were unavoidable; and

- [Greenberg] did not disclose that in a legal malpractice action an arbitration may be a much more favorable venue to an attorney than to the attorney's clients, nor did it disclose the full ramifications of waiving a right to trial by jury, and the right to appeal for errors of law and fact.

Because it determined that Greenberg failed to adequately disclose the existence and nature of the arbitration provision to NAICO, the trial court held that the provision was "unenforceable under the doctrine of constructive fraud . . . ."

This appeal followed.

## STANDARD OF REVIEW

Arbitration cannot be ordered in the absence of an agreement to arbitrate. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994). Thus, despite strong presumptions that favor arbitration, a valid agreement to arbitrate is a threshold requirement to compel arbitration. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737–38 (Tex. 2005) (orig. proceeding). Courts apply state contract law in determining whether there is a valid agreement to arbitrate. *See In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding). Once the arbitration movant establishes a valid arbitration agreement that encompasses the claims at issue, a trial court has no discretion to deny the motion to compel arbitration unless the opposing party proves a defense to arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001) (orig. proceeding).

The trial court conducts a summary proceeding to make the gateway determination of arbitrability. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding). The trial court's determination of the arbitration agreement's validity is a legal question that we review de novo. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). If the court's factual findings are in dispute, we review the court's denial of the motion under a legal sufficiency or "no evidence" standard of review. *Id*. at 233.

ISSUES AND ANALYSIS

On appeal, the main dispute centers on whether Greenberg had a duty to disclose to NAICO and Okie the existence and nature of the arbitration provision in the retainer agreement. The parties also dispute whether Okie, as a non-signatory, is bound by the arbitration agreement. Furthermore, NAICO conditionally requests that, should we reverse the trial court's order denying Greenberg's motion to compel arbitration, we should likewise reverse the trial court's order denying arbitration of the claims against DePalma and FisherBroyles.

## I.     Did Greenberg have a duty to disclose the nature and existence of the arbitration clause in the retainer agreement to NAICO?

The trial court's finding of a "longstanding" fiduciary relationship between NAICO and Greenberg is undisputed. Instead, the parties dispute whether that relationship imposed a fiduciary duty on Greenberg to disclose implications of the arbitration provision to NAICO.

Greenberg asserts that it did not owe a duty to NAICO and Okie, relying on our decisions in *Labidi v. Sydow*, 287 S.W.3d 922 (Tex. App.—Houston [14th Dist.] 2009, no pet.), and *In re Pham*, 314 S.W.3d 520 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding [mand. denied]). In *Labidi*, we rejected a plaintiff's argument in a legal malpractice case that state public policy required heightened

disclosures by the attorney regarding an arbitration provision in an engagement letter. *Labidi*, 287 S.W.3d at 929. We reemphasized our holding in *Pham*, stating:

> [W]e believe that such policy arguments are better directed to the legislature. Indeed, the legislature has already considered limitations on arbitration agreements in certain contexts, as demonstrated by section 171.002 of the Texas Civil Practice and Remedies Code, and has yet to see fit to include attorney-client contracts among those requiring restrictions.

*Pham*, 314 S.W.3d at 526. We acknowledged, though, that "it is not impossible for a special, fiduciary, or attorney-client relationship to arise prior to entering a formal agreement . . . ." *Id.* at 527. Because the appellant in *Pham* did not present evidence of a preexisting fiduciary relationship, we declined to hold that the attorney was obligated to disclose the implications of the arbitration provision in the retainer agreement between the parties. *Id.* at 527–28.

NAICO's primary position on appeal is that its relationship with Greenberg is exactly the type of preexisting relationship we contemplated in *Pham*. Therefore, NAICO argues, Greenberg breached its fiduciary duty when it failed to disclose the nature and existence of the arbitration provision in the agreement.

The trial court's order does not specify the source of the "longstanding fiduciary relationship" that it found existed between Greenberg and NAICO. Though the source of the fiduciary relationship is unclear, NAICO insists that Greenberg's duty of disclosure arises out of an attorney-client relationship or an informal fiduciary relationship based on trust and confidence. Even accepting the trial court's undisputed finding that a longstanding fiduciary relationship existed between NAICO and Greenberg, we are unconvinced that the relationship, whether informal or attorney-client in nature, imposed an overarching duty on Greenberg to disclose the arbitration provision.

7

Although the relationship between parties may be fiduciary in character, their fiduciary duties extend only to dealings within the scope of the underlying relationship of the parties. *Rankin v. Naftalis*, 557 S.W.2d 940, 944 (Tex. 1977); *see also Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 159 (Tex. 2004) (applying this principal to attorney-client relationships). In this case, extending the scope of Greenberg's longstanding relationship with NAICO—and its accompanying fiduciary duties—to the commencement of a new representation presents three distinct problems.[1]

First, it conflicts with the parties' own agreement. The retainer agreement between the parties specifies that "[t]he representation of NAICO and Okie addressed in this agreement relates only to the [Okie appeal]." The agreement further states that the engagement would commence "upon [Greenberg's] receipt of the signed copy of this letter." If Greenberg owed NAICO fiduciary duties which extended to the commencement of all future representations, such language would be unnecessary. Second, a holding that a lawyer's duties to a repeat-client insurance company extend to the commencement of future representations, even in the absence of a retainer agreement to that effect, would transform arms-length negotiations for services between the insurance-defense bar and its primary

---

[1] NAICO cites numerous cases in support of its argument that a duty of disclosure relating to new representations arises out of a longstanding fiduciary relationship. *See Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex. 1964); *Cooper v. Lee*, 12 S.W. 483, 486 (Tex. 1889); *Waterbury v. City of Laredo*, 5 S.W. 81, 85 (1887). Those cases are not helpful here. *Waterbury* states that contracts between attorneys and clients in new transactions be closely scrutinized because the attorney is "in an attitude to exert a strong influence over the actions and interests of the client." *Waterbury*, 5 S.W. 85. But *Waterbury* concerns only the reasonableness of fees in future representations, which is now embodied in Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct. Similarly, *Cooper* reflects the modern rule requiring fairness in an attorney's business transactions with a client. *See* Tex. Disciplinary R. Prof'l Conduct 1.08(a). *Archer* concerns an attorney-client contract relating to compensation in a representation already in existence, not a new representation.

customers into fiduciary transactions. And third, as we noted in *Pham*, the legislature has already considered limitations on arbitration agreements in certain contexts, evidenced by section 171.002 of the Texas Civil Practice and Remedies Code, but has not seen it necessary to extend such protections to the attorney-client context.

For these reasons, we conclude that Greenberg did not have a fiduciary duty, in spite of its longstanding relationship with NAICO, to disclose the implications of an arbitration provision in a retainer agreement for a new representation.

## II. Is Okie, as a non-signatory, bound by the terms of the retainer agreement?

Okie does not contend that Greenberg owed it a fiduciary duty to disclose the arbitration provision in the retainer agreement—nor could it, because our holding in *Pham* is directly on point. The trial court did not find that any preexisting special, fiduciary, or attorney-client relationship existed between Greenberg and Okie. Therefore, Okie's relationship to Greenberg is the same as the attorney-client relationship we considered in *Pham*: a client whose fiduciary relationship with its attorney began with the execution of the attorney-client contract. *See Pham*, 314 S.W.3d at 522. In this scenario, the attorney is not required to disclose to the prospective client the implications of the arbitration provision. *Id*. at 528.

Instead, Okie insists that we affirm the trial court's finding that it could not be bound by the arbitration provision as a non-signatory. The TAA provides that a "written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that: (1) exists at the time of the agreement; or (2) arises between the parties after the date of the agreement." Tex. Civ. Prac. & Rem. Code § 171.001(a). The "agreement" need not meet all the formal requirements of a

contract, but it must be supported by mutual assent. *Rachal v. Reitz*, 403 S.W.3d 840, 845 & n.4 (Tex. 2013). Typically, a party manifests its assent by signing the agreement. *Id*. In this case, the trial court found that Okie did not sign the agreement and, therefore, could not be bound by its terms.

But under the doctrine of direct benefits estoppel, a party who is seeking the benefits of a contract or seeking to enforce it is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes. *Id*. at 486 (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739). If the claims are based on the agreement, they must be arbitrated, but if the claims can stand independently of the agreement, they may be litigated. *Id*. Thus, a non-signatory should be compelled to arbitrate only if it seeks, through its claims, to derive a direct benefit from the contract containing the arbitration provision. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 741.

Here, Okie's claims are based on the retainer agreement, which explicitly states that the "engagement will commence upon [Greenberg's] receipt of the signed copy of this letter." Each claim that Okie asserts—negligence, malpractice, and breach of fiduciary duty—is based on Greenberg's legal representation of Okie, which arises out of the agreement. *See In re Morgan Stanley & Co.*, 293 S.W.3d 182, 190 (Tex. 2009) (orig. proceeding) (Brister, J., concurring) (stating that breach of fiduciary duty, negligence, and malpractice claims were based on client's contract with broker). Because Okie insists that Greenberg violated various duties owed to Okie as a client, it cannot avoid the arbitration provision in the agreement providing for Okie's legal representation. *See Rachal*, 403 S.W.3d at 846.

Having concluded that Greenberg did not have a duty to disclose the implications of the arbitration provision to NAICO, and that Okie is bound by the

arbitration provision, we reverse the trial court's order denying Greenberg's motion to compel arbitration.

**CROSS-POINT**

Although NAICO and Okie opposed Greenberg's motion to compel arbitration in the trial court, they also filed an alternative motion requesting that FisherBroyles and DePalma be required to arbitrate if Greenberg's motion was granted. When the trial court denied Greenberg's motion, it issued a separate order denying NAICO and Okie's alternative motion. After Greenberg filed its notice of appeal to dispute the trial court's order denying Greenberg's motion to compel arbitration, NAICO and Okie filed a notice of appeal to dispute the trial court's denial of their alternative motion. NAICO and Okie's notice of appeal was served on all parties. Because we reverse the trial court's order denying Greenberg's motion to compel arbitration, NAICO and Okie request in a cross-point that we also reverse the trial court's separate order denying their alternative motion to compel DePalma and FisherBroyles to arbitrate.

After DePalma left Greenberg to join FisherBroyles, NAICO and Okie executed an engagement letter that provided:

> FSB will continue the representation of Okie on the same terms and conditions stated in the Engagement Agreement between NAICO and Greenberg Traurig, LLP as to any issues, provision or terms not discussed herein. As to any conflict between this engagement letter and the Agreement between NAICO and Greeberg Traurig, this letter controls.

The FisherBroyles engagement letter does not discuss arbitration. Therefore, NAICO and Okie contend that the FisherBroyles agreement incorporates the arbitration provisions of the Greenberg agreement. FisherBroyles and DePalma have not filed any response to NAICO's cross-point, and Greenberg does not

dispute it. We agree with NAICO and Okie that the FisherBroyles agreement incorporates the arbitration provisions of the Greenberg agreement. We therefore sustain the cross-point and reverse the trial court's order denying NAICO and Okie's alternative motion to compel arbitration.

## CONCLUSION

We reverse the trial court's order denying Greenberg's motion to compel arbitration with NAICO and Okie. We further reverse the trial court's order denying NAICO and Okie's alternative motion to compel arbitration with FisherBroyles and DePalma. We render judgment ordering all parties to arbitrate NAICO and Okie's claims, and we remand this case to the trial court for further proceedings consistent with this opinion, including the grant of an appropriate stay. *See* Tex. Civ. Prac. & Rem. Code § 171.025(a).

_____

Justice Ken Wise

Panel consists of Justices Boyce, Busby, and Wise.